## ORTON vs. NOONAN and another.

TAX DEED. (1) *Form of tax deed of several lots.* (4) *What irregularities in assessment will invalidate the deed.*

STATUTE OF LIMITATIONS. (2) *How it must be pleaded.* (3) *Amendment of pleading for that purpose.*

EVIDENCE. (5) *Tax receipts in evidence:*

1. A tax deed of several lots, which states only the *gross* amount for which they were sold, is not invalid for that reason, if it shows that they were *sold separately.*

2. Where the complaint in ejectment does not disclose the plaintiff's title, a general denial will not enable defendant to take advantage of the statute of limitations (R. S., ch. 138, § 1); but he must at least answer generally that he will insist upon the statute.

3. But where plaintiff, at the trial, *relies on a tax title,* defendant should be allowed, on terms, to amend by pleading the statute, although amendments of that kind in other cases are not usually favored.

4. Where a tax deed is only *prima facie* evidence of the regularity of the proceedings, proof that the part of a city or village lot therein named, which was owned and occupied by defendant, was assessed, not separately against him, but together with the residue of the same lot, which was owned and occupied by another person, is sufficient to invalidate it.

5. Where parts of lots claimed by plaintiff under tax deeds were parcel of a paper-mill property owned and occupied by defendants, tax receipts showing payment in full of the taxes upon property designated therein as "paper-mill," "where the paper-mill is situated," etc., were admissible in evidence for defendants, although the premises were also inaccurately designated by lots and blocks in said receipts. It was for the jury to determine, on the whole evidence, whether the receipts were intended to cover the property in dispute.

APPEAL from the Circuit Court for *Milwaukee* County.

Ejectment (brought in June, 1867), for "twenty-eight feet front and rear in the south-easterly part of lot 2, block 1," and "the north-westerly twenty-eight feet front and rear of lot 4," in the same block. The two fractional lots are described in the complaint by metes and bounds, and as situate in sec. 9, T. 7, R. 22 east, etc., and it is averred that the "north-westerly twenty-five feet front and rear," and the "south-easterly twenty-eight feet front and rear," of a paper-mill stand upon said two fractional lots, respectively. As to plaintiff's right, the complaint merely. avers in the usual form that he had an estate in fee simple in said premises at the commencement of the action, and was entitled to the possession, and that defendant unlawfully withheld the possession, to his damage, etc. The answer was a general denial.

At the trial, plaintiff offered in evidence a tax deed made upon a sale in 1854 for the taxes of 1853, which recited that "lots 1, 2 and 4, in block 1, sec. 9, T. 7, R. 22, village of Humboldt," etc., "were, for the non-payment of taxes, sold by the treasurer aforesaid, at public auction [describing time and place] to the said *J. J. Orton,* for the sum of $17.38, on the whole, said lots and tracts of land having been separately sold for the several sums respectively above stated, which sum was the amount of taxes assessed, and due and unpaid, on said several tracts of land, together with the costs, charges of such sale," etc. There are no "several sums respectively stated" in the preceding or any other part of the deed. This deed was ruled out, as void on its face. Plaintiff also offered various other tax deeds, which the court held invalid upon grounds which will sufficiently appear from the opinion. The court also admitted in evidence, against plaintiff's objection, certain tax receipts offered by defendants to show that they had paid the taxes

on the premises for which some of the tax sales relied on by plaintiff were made. The objection urged against this evidence will also appear from the opinion.

Verdict for the defendants; new trial denied; and plaintiff appealed from a judgment on the verdict.

*J. J. Orton*, appellant, in person, contended that the deeds for the taxes of 1851 and 1852 were *conclusive* evidence that the proceedings in the *assessment* of such taxes were regular, and all evidence tending to show that errors were committed in the assessment should have been rejected. Laws of 1852, ch. 503, secs. 1, 2 ; Laws of 1853, ch. 57 ; Laws of 1854, ch. 66, secs. 1, 2 ; *Smith v. Cleveland*, 17 Wis. 556 ; *Freeman v. Thayer*, 33 Me. 76 ; Smith's Comm. § 788 ; Blackwell, 815, 816.

*I. P. Walker*, for respondent, contended that the deeds upon the sales for taxes of 1851 and 1852 were only *prima facie* evidence of the regularity of the proceedings, the former sale having been made April 12, 1852, before the passage of ch. 503 of the laws of that year, and the latter having been made April 12, 1853, twelve days after the repeal of that chapter by ch. 57 of the Laws of 1853. *Smith v. Cleveland*, 17 Wis. 556, 559.

DIXON, C. J. It was error to reject the tax deed issued upon the sale of 1854 for the taxes of 1853. That deed was excluded for the reason, as alleged, that it was void on its face. The court so ruled because it appeared on the face of the deed that the lots conveyed, three in number, were sold in gross for a gross sum. This was a mistake. It appears on the face of the deed that the lots were separately sold. The deed expressly so recites, though it does not show the sum for which each lot was sold, but only the gross sum for which all were sold. The language in this respect is perhaps a little ambiguous, but still there can be not much doubt as to its meaning. We understand the sum of $17.38, named in the deed, to have been the gross sum for which all the

lots had been separately sold, together with the costs and charges of sale. The words "$17.38 on the whole," seem to make this very plain; and this being so, the question whether a sale in gross for a gross sum, if it had so appeared, would avoid the deed, does not arise. The only objection now possible is, that the sum for which each lot was separately sold is not stated in the deed. No such objection is urged, and it seems clear that it would be unavailing if it were. No reason is perceived for requiring such statement. It could be of no possible use or benefit to any body. There can be no redemption after the deed is recorded, and if a party desires to redeem before, he must go to the office of the clerk of the county board of supervisors, where all needful information can be obtained. It is immaterial, therefore, that the sum for which each particular lot was sold was omitted in the deed.

We think it was also error for the court to instruct the jury that the deed upon the sale of April 8, 1856, for the taxes of 1855, was out of the case under the statute of limitations, which requires the action to be commenced within three years next after the recording of the tax deed. That deed was executed and recorded November 6, 1861, and more than three years before the commencement of this suit. The difficulty with the instruction is, that the objection was not taken by answer. The statute provides, that the objection that the action was not commenced within the time limited can only be taken by answer. R. S., ch. 138, § 1. It is true, it has been held that a demurrer is an answer, within the meaning of the statute, where the facts showing the bar appear on the face of the complaint. *Howell v. Howell*, 15 Wis. 55. And it has also been held to be sufficient if the facts showing the defendant to be within the protection of the statute are specifically stated in the answer. *Whitney v. Marshall*, 17 Wis. 174. But here the answer is a mere general denial of the allegations of

the complaint, which is the ordinary one in ejectment; and as it is impossible for the courts to disregard or do away with the provisions of the statute, it follows that the case is not within the general rule of pleading and proof in ejectment, laid down in *Lain v. Shepardson*, 23 Wis. 224. The objection must be taken by answer; and in actions of this kind, where the complaint does not disclose the specific title or titles relied upon, we can see no other way than for the defendant to answer generally that he insists or shall insist upon the statute of limitation in bar of the plaintiff's right of action. This would undoubtedly be safe in all cases, and enable the defendant, whenever it became proper or necessary upon trial, to take advantage of the statute. But in this case the defendants have not so answered, and the inquiry suggests itself whether it would be proper now to permit an amendment in that respect. In general, the plea of the statute of limitations is not favored and amendments not allowed. But we think there should be some discrimination upon the subject, and that much should depend upon the nature of the action. It might be very wrong and unjust in an action for the collection of a debt, fairly and honestly contracted, to allow the defendant to defeat it on this ground by an amendment of his answer, and thus to perpetuate and complete the wrong already done to the plaintiff; while in other actions no such unjust consequences would follow. The nature of the action should be considered, and if it be a hard or oppressive one, not founded on a meritorious cause, but sustained by technical rules merely, and likely to work injustice if otherwise allowed to prevail, then let the amendment be made. We see no objection to this; and in actions like the present, which may generally be denominated hard, if leave to amend were asked and granted on suitable terms, we cannot say it would be error.

As to the other objections and exceptions taken and

urged by the plaintiff, we cannot see that any of them are well founded.

The decision and instructions of the court, holding that the deeds for the taxes of 1851 and 1852 were invalid, because the parts of the lots owned and occupied by the defendants were assessed, not separately against them, but together with the residue of the lots owned by others and as a single assessment, were clearly correct. It has frequently been so held by this court. *The State ex rel. Roe v. Williston*, 20 Wis. 228; *Crane v. Janesville*, id. 305; *Hamilton v. Fond du Lac*, ante, p. 490. And the deeds for those years being but *prima facie* evidence of the regularity of the previous proceedings, this objection was open to the defendants.

Nor was there any error in admitting evidence to show payment of the taxes for those and the subsequent years. The parts of lots in dispute, and to which the plaintiff claims title by virtue of the tax deeds, were parcel of the paper-mill property owned and occupied by the defendants. The receipts show payment in full of taxes upon property designated in them as "paper-mill," "where the paper-mill is situated," etc.; though the premises are also designated as lots, but not accurately so. In some they are described as "lot 3, block 1, village of Humbolt;" in others, "lot 4 and part of lot 5 in Humbolt," without naming the block. In none of them are the parts of lots 2 and 4, block 1, here in controversy, specified. If the taxes on these parts of lots were paid, and the receipts are to be applied to them, it must be under the general designation of "paper-mill," or property "where paper-mill is situated," as found in the receipts. The court below submitted to the jury, as a question of fact, whether the taxes were so paid. This, we think, was correct. The receipts, with the parol testimony, certainly constituted sufficient evidence to go to the jury, upon the question of payment. It being shown that the parts of lots in question were parcel of the mill property,

the receipts alone become pretty strong evidence of payment. They are full and satisfactory proof of it so far as the value of the parts of lots was enhanced or represented by the value of the mill and improvements made upon them. The tax upon the value of the mill and improvements was entirely paid. Of that there can be no dispute. The taxable value of the mill and improvements was at least one hundred times that of the land on which they stood. This appears from the assessment rolls. The "paper-mill" was annually assessed as upon lot 3, at $2,000, except in 1853, when it was $1,500. The words "paper-mill" appear in the assessment-rolls opposite this lot. The other lots in the block, lots 2 and 4 inclusive, were at the same times assessed at $10 each. Payment, therefore, of the taxes upon the "paper-mill," was payment of ninety-nine one-hundredths or more of the taxes upon these parts of lots, and it may perhaps be entirely correct to say that it was payment of the whole of the taxes. The difficulty arises from a mistake of the taxing officers in not properly describing the lots and parts of lots upon which the paper-mill was situated. It was the fault of the assessors that they were not correctly described and entered upon the assessment rolls. If no mistake had occurred, and the premises had been properly described and entered in the assessment rolls, it is altogether improbable it would have made the slightest difference in the valuation of the "paper-mill." The assessors, undoubtedly, in fixing the valuation of the "paper-mill," took into consideration, also, the value of all the land occupied by and immediately used with it. The assessors intended to and did assess and estimate the value of the whole of such land, though they failed to enter it correctly in the rolls. When, therefore, the taxes upon the "paper-mill" were paid, it may with truth be said that the taxes upon the land occupied by it were also paid. And it is not probable, either, had no mistake occurred, that it would have made any difference

in the valuation of the residue of lots 2 and 4. The assessed value was so small, it is very likely the residue would have gone in at the same valuation as the full lots. But, whether this would have been so or not, the owner of such residue, who was the plaintiff in this case, could have suffered no loss from the assessments as they were. He could have redeemed by paying proportionally ; or, what was more to his advantage, he could have avoided the taxes entirely upon the principle above stated, because they were assessed against him for the whole lots, when a part of the lots were owned and occupied by the defendants.

These observations, we believe, sufficiently dispose of all material questions arising in the case ; from which it follows that the judgment below must be reversed, and a *venire de novo* awarded.

*By the Court.* — So ordered.

PAINE, J., did not sit in this case, having been of counsel.