Austin vs. Holt and others.

AUSTIN VS. HOLT and others.

TAX SALE AND DEED. (1) *Division of county after land assessed and returned delinquent.* (2, 3) *Description of land in tax deed.* (4, 5) *Omissions and misrecitals.* (6) *Constructive possession of grantee.*
ADVERSE POSSESSION: (7) *What constitutes.*

1. Where a county was divided *after* land therein was assessed for taxes and returned delinquent, and *before* they were sold, and by such division the land was included within a new county, a sale and deed for such taxes, made by the proper officers of the old county, *held* to be valid under secs. 1, 2, 3, 16, 18 and 25, ch. 22, Laws of 1859.
2. The certificate of a sale of land for taxes, and the deed, relate to and are founded on the assessment roll and return; and as the description of the land in the certificate and deed in the case above stated follows that given in the roll and return, which was correct when the latter were made, the deed is sufficient.
3. If the certificate and deed had described the land as situate "in the county of O. at the time of the assessment and return, but now in the county of S.," such description would probably not have vitiated the deed; but it was not necessary.
4. In a tax deed of several tracts of land, the omission of the word "several" before the words "tracts of land," where that word occurs in parenthesis in the statutory form given in sec. 50, ch. 22, Laws of 1859, *held* not to invalidate the deed.
5. A tax deed *held* not to be invalidated by a misrecital therein that H. J., the grantee, was the purchaser at the tax sale, where it appeared from the face of the deed that said H. J. was not such purchaser but was the assignee of the certificate.
6. A recorded tax deed of unoccupied land, valid on its face, draws after it the constructive possession. *Lawrence v. Kenney* (ante, p 281) followed.
7. A possession of land which is merely incidental and subsidiary to the commission of a trespass thereon, as by cutting and removing the timber, and which is abandoned when that object is accomplished, although it may have continued for some weeks or months, is not such an "adverse possession" as will prevent the true owner of the land from maintaining trover or replevin for the timber thus taken.

APPEAL from the Circuit Court for *Brown* County.

Action for the conversion of a quantity of saw logs belonging to the plaintiff, by the defendants *Devilla R. Holt* and *Jane*

*E. Balcom*, who, at the time of such conversion (April 1, 1871), were partners in the business of manufacturing and dealing in lumber at the city of Oconto, in this state. *Uri Balcom* was also made defendant as husband of said *Jane E. Balcom.* The logs are alleged to have been cut by one Sargent, from the S. E. 1-4 of S. W. 1-4 of section 4, and the N. E. 1-4 of N. W. 1-4 of section 9, and two other described quarter-quarter sections of land, in town 28, range 17, in Shawano county. Answer, a general denial.

Sec. 35, ch. 2, R. S., defines the boundaries of the county of Oconto; and sec. 46 of the same chapter those of Shawano county. By ch. 119, Laws of 1860 (published March 19, 1860) "townships 28, 29 and 30 of ranges 15, 16 and 17 east, now [then] a part of Oconto county," were detached from it and annexed to Shawano county. The plaintiff claimed to own the premises by virtue of a tax deed executed November 25, 1863, by the clerk of the board of supervisors of Oconto county, in the following form :

"Whereas Hiram Johnson, assignee of Oconto county, has deposited in the office of the clerk of the county board of supervisors of the county of Oconto, in the state of Wisconsin, twenty-nine certificates of the county treasurer of said county, whereby it appears (as the fact is) that the following described pieces or parcels of land lying and being situated in the county of Oconto, to-wit : Certificate 1892. The southeast 1-4 of the southwest 1-4 of section four (4), town twenty-eight (28) north, range seventeen (17) east, sold for two dollars and sixty-six cents. Certificate 1918. The northeast 1-4 of the northwest 1-4 of section nine (9), town twenty-eight (28) north, of range seventeen (17) east, sold for two dollars and sixty-six cents [here twenty-seven other tracts were described in a similar manner] were, for the nonpayment of taxes, sold by the county treasurer, at public auction, at the village of Oconto, in the county of Oconto, on the 4th day of September, A. D. 1860, to the said Oconto county, for the sum of $76.52, in the whole, which

sum was the amount of taxes assessed and due and unpaid on said — tracts of land, together with the costs and charges of such sale due therewith at the time of making such sale; the whole of which sum of money has been paid by the aforesaid purchaser, Hiram Johnson; and whereas it further appears [here follow the averments as to nonredemption, etc., prescribed by sec. 50, ch. 22, Laws of 1859]: Now, therefore, know all men by these presents, that the county of Oconto, in said state, and the state of Wisconsin, in consideration of the said sum of money aforesaid and the premises, and in conformity to law, hath and hereby doth give, grant and convey the tracts of land above described, together with the hereditaments and appurtenances, to said Hiram Johnson, and to his heirs and assigns, to their sole use and benefit forever." The conclusion need not be recited. The deed was duly acknowledged, and was recorded December 11, 1863, in Shawano county.

The defendants objected to the admission of this deed in evidence, on the ground that the lands, at the time of the sale, were in Shawano county, and are falsely described as in Oconto county; that the officers of Oconto county had no authority to make the sale or issue the deed; that the deed does not show that the purchaser at the sale paid the amount for which the lands were bid off and sold; and that the word "several" is omitted before the word "tracts" in said deed, though required by the statute. Objection overruled, and deed received in evidence.

The plaintiff then put in evidence a quitclaim deed from Hiram Johnson and wife to himself, dated October 26, 1863, acknowledged before a justice of the peace in Winnebago county, and recorded April 26, 1866, describing the premises in question, among others; an objection on the ground that no title to the premises was shown to be in Johnson, being overruled. He then offered a tax deed of the same lands from Shawano county to one Felker, dated August 25, 1862, and a

quitclaim deed from Felker to Johnson, dated October 12, 1863 ; which were ruled out, the tax deed being void on its face. He also made proof that the lands were sold in 1864, for taxes of 1863, and were redeemed by him from said sale ; that he paid the taxes thereon for the years 1864-5-6-7 ; that the lands were sold for nonpayment of the taxes of 1868, and redeemed by him ; and that he paid the taxes thereon for 1869. As a witness in his own behalf, he testified that he thought the four deeds above described were all delivered to him by Johnson at the same time ; and that he never took possession of the lands. On cross examination he stated that he could not say when these deeds were delivered to him ; thought it was in the fall, but did not recollect the year ; could not tell how long it was after "the Johnson deed" was made out before he got it, but should think it was a month or more. Hiram Johnson, for the plaintiff, testified that he delivered, or caused to be delivered, to plaintiff, the four deeds offered in evidence ; that he could not positively say whether they were delivered all together ; that "there were several deeds that followed, that were not delivered the first time," which he "got out for plaintiff's benefit," and "to confirm the sale" made by him to plaintiff, by transferring to the latter "all the title which he (witness) had or could get" ; that his residence at the time was in Omro [Winnebago county], but he did not remember where he and his wife signed the deed ; that the justice before whom it was acknowledged lived in Omro ; that he did not remember where or to whom he delivered the deed, nor how long it was after it was made before it was delivered — did not know but that it was at the same time. On being recalled, he testified that he thought that one of the four deeds above described was obtained and delivered to plaintiff after the delivery of the other three ; that he thought this was the quitclaim deed from Mr. Felker. On being asked whether the deed to him from Oconto county was delivered after the other deeds, he answered that

he did not know, and would not then give any opinion, whether it was or not.

It appeared further from plaintiff's evidence that the logs in question had been cut upon said lands by Sargent in the winter of 1870–71; and that *Holt & Balcom* had purchased 350,000 feet of them from Sargent; for which they had refused to pay plaintiff, on demand, upon the ground that he had no title to the lands; and proof was made of the value of the logs.

The defendants moved for a nonsuit on the grounds, 1. That the tax deed to Johnson was void, for the reasons above stated. 2. That the statute of limitations had run on plaintiff's claim under said tax deed — he having never been in possession, and not having paid the taxes of 1863 or 1868. 3. That plaintiff acquired no title under said tax deed, because the same was issued to Johnson *after* the delivery of the quitclaim deed from the latter to the plaintiff. The motion was denied.

The defendants put in evidence a tax deed of the lands in question, from the county of Shawano to one Bransfield, based on the sale of 1867 for taxes of 1866, which deed was issued and recorded in May, 1870; and also a quitclaim deed of said lands from Bransfield to John Sargent, dated November 7, 1870; and their evidence tended to show that Sargent went upon the lands the following winter, and cut the logs in dispute, believing that the tax deed to Bransfield was valid. It was admitted, however, that said deed was invalid, the taxes upon the lands in 1866 having been paid. Sargent himself testified: " When I sold the logs to *Balcom*, I claimed to be the owner of the lands, and showed *Balcom* my title deeds. I took possession of the lands under my deed about the first of December, 1870. I remained there until somewhere about the first of March. I had some lumbering camps upon them — camps and hovels. I built them as soon as I went there that fall. I had men at work there during the whole winter. Sometimes I used to leave off for a day or week; occasionally came down after supplies. I was not there in person all the time,

but had men there all the time. The logging camps were made of logs and covered with split pieces of pine or cedar. They are built large enough to hold a crew. I was in possession of all these lands during the whole time." A witness for defendants then testified that the only use made of pine lands in that part of the state is to cut timber from them; and that the only possession or occupation taken of such lands by their owners was to build camps upon them, and cut and haul the logs, when they got ready to do so. On cross examination he testified as follows: "Q. Are people in that vicinity in the habit of owning pine lands and paying taxes on them? A. Yes. Q. And employing other persons to watch them, to look over them, and see that trespasses are not committed upon them? A. Yes. Q. That is the sort of acts of ownership which they exercise before they go on and cut the timber, is it? A. They do in some cases, perhaps."

The plaintiff being recalled (apparently for the defense) admitted that he did not remember whether the quitclaim deed from Johnson to himself was delivered to him about the time of its date, or whether the tax deed from Oconto county to Johnson was delivered to him at the same time with said quitclaim deed. It appeared in evidence that said quitclaim deed was acknowledged in Winnebago county, and that the plaintiff resided in the town of Lake, in Milwaukee county; and plaintiff testified that the deed was delivered to him at his residence.

The court instructed the jury that the tax deed to Bransfield was void; that the tax deed to Johnson passed to him a good title to the lands; that if Johnson's quitclaim deed was delivered to plaintiff *before* said tax deed was issued, no title passed to plaintiff; but that a good title passed to him if the quitclaim deed was delivered at any time after the issue of the tax deed; and that in this latter case plaintiff was entitled to a verdict. At plaintiff's request the jury were further instructed, that if they believed from plaintiff's testimony that

the quitclaim deed was delivered to him at his house in the town of Lake, Milwaukee county, that fact rebutted the legal presumption that the deed was delivered on the day of its date, as it appeared conclusively that said deed was executed in Winnebago county. Instructions of an opposite character, asked by defendants, were refused, including the following: That if Sargent "went on the lands in question claiming title in good faith under the tax deed to Bransfield, and had open, notorious, hostile and continuous possession during the time the timber in question was cut, built his lumbering shanties, and had the ordinary occupation and possession of such lands during said time," then the verdict must be for the defendants.

Verdict for the plaintiff; a motion for a new trial on the ground that there was error in the instructions, and that the verdict was contrary to the evidence, was denied; and defendants appealed from a judgment on the verdict.

*Hastings & Greene,* for appellants, argued that the tax deed to Johnson was invalid, 1. Because county officers have no authority to sell lands for taxes except such as is conferred by statute, and there is no statute authorizing the officers of one county to sell lands situate in another county. 2. Because the description of the premises as situate in Oconto county is false, or, if those words could be rejected as surplusage, fatally defective. Tax deeds cannot be aided by proof *aliunde,* intendment or presumption. *Curtis v. Sup'rs,* 22 Wis., 169; *Orton v. Noonan,* 23 id., 103–4; *Delorme v. Ferk,* 24 id., 201. Counsel distinguished the cases of *Atwater v. Schenck,* 9 Wis., 164, and *Huey v. Van Wie,* 23 id., 613. 3. Because of the omission of the word "several" before "tracts," where that word is required by the statute (Laws of 1859, ch. 22, sec. 50), the omitted word being necessary to show, (1) that each tract was assessed separately, (2) that every one of the tracts was assessed, and (3) that the amount for which the sale was made was the sum of the amounts due on each and every one of the tracts. 4. Because the statute requires the deed to recite a

payment by the purchaser of his bid, and this deed does not recite that fact, but negatives it by reciting that the amount was paid by Hiram Johnson, who was not the purchaser but the assignee. II. If the deed was valid, still all right under it was barred by the statutory limitation (Laws of 1859, ch. 22, sec. 32), the plaintiff not having taken possession, and not having paid the taxes for five successive years after the date of the deed. Counsel here argued at length that the *redemption* of the land was not a payment of the taxes within the meaning of the statute. They further argued that the statute bars not merely the remedy, but the right or title. *Sprecker v. Wakeley*, 11 Wis., 432; *Hill v. Kricke*, id., 442; *Knox v. Cleveland*, 13 id., 245, 249; *Brown v. Parker*, 28 id., 21. III. The quitclaim deed from Johnson to plaintiff having been executed thirty days before the execution of the tax deed to Johnson, it was incumbent on plaintiff to show that the former was delivered to him after the execution and delivery to Johnson of the latter. The legal presumption is that the deed was delivered at the time of its date. *Smith v. Porter*, 10 Gray, 66; *Seymour v. Van Slyck*, 8 Wend., 404, 407, 414; *Savery v. Browning*, 18 Iowa, 248; 2 Greenl. Ev., § 297. This presumption is so strong that it is not overcome by the fact that a deed was acknowledged at a subsequent date. *Deininger v. McConnell*, 41 Ill., 228; *Jayne v. Gregg*, 42 id., 413; *Blake v. Tash*, 44 id., 302. The fact that the deed was delivered in Milwaukee county did not necessarily destroy this presumption. It may have been a strong circumstance for the consideration of the jury; but the question was for them, and the court erred in instructing them as to the positive effect of the testimony. *Zonne v. Wiersom*, 3 Chand., 240; *Ford v. Smith*, 27 Wis., 261–267. IV. Even if plaintiff had good title to the land when the logs were cut, he was not entitled to a recovery. Where one in the adverse possession of lands commits trespass or waste, an action of trespass, trover or replevin will not lie in favor of the true owner until the possession has been re-

gained; and third persons dealing with the party in adverse possession are not liable in an action at all.  *Dewey v. Osborne*, 4 Cow., 368; *De Mott v. Hagerman*, 8 id., 220; *Holmes v. Seely*, 19 Wend., 507; *Cochran v. Whitesides*, 34 Mo., 417; *Wickham v. Freeman*, 12 Johns., 183; *Case v. De Goes*, 3 Caines R., 261; *Stockwell v. Phelps*, 34 N. Y., 363.  Sargent's possession of the premises was that of a disseizor.  (1) The tax and quitclaim deeds under which he claimed constituted color of title.  *Edgerton v. Bird*, 6 Wis., 527; *Whitney v. Powell*, 1 Chand., 52; *Woodward v. McReynolds*, id., 244; 11 Wis., 442.  (2) His entry, under these recorded deeds, is referred to them, and his seizin deemed co-extensive with the boundaries stated in them, there being no open adverse possession of any part of the land in any other person.  Tyler on Ejectm., 903 and cases; 5 Peters, 401, 438; 21 How. (U. S.), 493; 24 Wis., 329.  (3) The statute (R. S., ch. 138, sec. 7) has prescribed what disseizin or adverse possession shall be *under the statute of limitations;* but it leaves the question in every other case as at common law. (4) But Sargent's possession was adverse even under the statute.  24 Wis., 329.  The "ordinary use" of this pine land is the cutting and selling of the pine.  This is its only capacity for "husbandry" — the way in which it is "usually improved."  What is adverse possession depends upon the nature of the land.  Tyler on Ejectm., 891; *Ewing v. Burnet*, 11 Peters, 41, 52, 53; *Ellicott v. Pearl*, 10 Peters, 412.

*Neville & Tracy*, for respondent, contended, among other things: 1. That the tax deed to Johnson was valid.   (1.) These lands, described by section, town and range, were attached to Oconto county, and subsequently transferred to Shawano county, by general laws, of which the courts take judicial notice.  The description in the deed cannot possibly mislead.  (2.) The treasurer of Oconto county was required to sell and deed these lands, as they had been " returned to him as delinquent."  R. S., ch. 18, secs. 60, 65, 68; Laws of 1859, ch. 22, secs. 1, 3, 25.   2. That the grantee in a recorded tax

deed of unoccupied land has the constructive possession, and the statute runs not against him, but against the former owner. 3. That under the instructions given, the jury must have found that Johnson's quitclaim deed was delivered to plaintiff after the issue of the tax deed to Johnson; and there was sufficient evidence to sustain the finding. 4. That the possession of the land by Sargent was merely for the purpose of committing the trespass, and was not an adverse possession under the statute.

DIXON, C. J. The description of the lands as lying and being in the county of Oconto, when in truth they were situate in the county of Shawano, was not, under the circumstances, a fatal misdescription or error even in a tax deed. The lands had been in Oconto county. They were in that county when the taxes were assessed, and properly assessed, as is fully conceded in the case. At the time of assessment, and in the assessment roll and delinquent return, they were correctly described as in that county. But the county of Shawano was set off and organized after the return and before the sale by the county treasurer, and before the execution of the tax deed. Was the treasurer to depart from or change the description as contained in the assessment roll and return, when he made the sale? Or was the clerk of the board of supervisors to depart from or change the description as contained in the certificate of sale, when he executed the deed? It appears to this court that such proceedings on the part of those officers would have been both unnecessary and unauthorized, or, if not unauthorized, then certainly unnecessary. If it was competent for the treasurer to make the sale at all, or for the clerk of the board to execute the deed, then it was proper for the former to describe the lands as he found them in the assessment roll and return, and the latter as he found them in the certificate of sale. Some additional words as "in the county of Oconto at the time of assessment and return, but now in the county of Shawano," might not

have vitiated, but they were not necessary.   The certificate and deed had relation to and were founded on the roll and return ; and it was enough that they pursued the description correctly given in the roll and return. The failure to designate the lands as within the new county of Shawano would mislead no one. Counties are divided and organized by public law, and every person was bound to know the law and to take notice of the formation of the new county, and when it took place, and what part of the territory of the old county was included within the new one.   The courts take such notice, as all persons must, and being informed by the deed of the date of sale and consequently of assessment, it is seen and known at once that the lands were in  Oconto county  at the time of assessment, and were therefore correctly so described in the roll and return made to the treasurer of that county.   This objection merits no further consideration, and will receive none, except we remark that the decisions heretofore made by this court and cited by counsel are not inconsistent with the views here expressed.

The next objection is, that the treasurer of Oconto county had no authority to sell, nor the clerk of the  board to execute the deed, after the separation took place and the county of Shawano was formed.   It is said that no such sale could be made or deed be executed, unless there existed express statutory authority for so doing.   The argument of counsel for the plaintiff, and their references, are enough upon this point. We fully agree with them that such express statutory authority did exist, and will be found in section one, two, three, sixteen, eighteen and twenty-five of chapter 22, Laws of 1859.   1 Tay. Stats., ch. 18, §§ 131, 132, 133, 153, 160 and 161.   The statute is imperative that all lands returned to the county treasurer, and upon which the taxes shall not be paid within the time limited, shall be subject to sale, and that the treasurer shall  advertise and sell *all* such lands. It provides how any lands sold may be redeemed, and makes it the duty of the clerk of the board to publish a list of *all* unredeemed lands, specifying the time

Austin vs. Holt and others.

when the period for redemption will expire, and also to execute and deliver a deed of *any* land sold for taxes which shall not be redeemed in the manner provided by law. And, as counsel observe, it is also noticeable that there are no words in the statute requiring the sale, conveyance or other acts, after the assessment and return, to be done within the county where the lands lie. This objection, too, must be overruled.

Another objection taken is, that the word "several," given in parenthesis in the statutory form, is omitted before the word "tracts" in the tax deed. We fail to appreciate the learning and ingenuity of counsel in support of this point, and must say that we look upon them as too nice and hypercritical to constitute the basis of sound judgment. That the word "several" might have been very properly used as the writer of the form did use it, is no doubt true, but that it has any such significance, or was intended to have, as that its omission shall avoid a deed otherwise valid, it is impossible for us for a moment to believe. Its use in the form was probably quite as much by accident as by any particular design, as persons engaged in writing often insert or omit a word, and its accidental omission cannot be held to vitiate or avoid the deed. The views of counsel, as we understand them, are somewhat akin to those which were unsuccessfully urged against the tax deed in *Orton v. Noonan*, 25 Wis., 672.

Another and the last objection taken to the deed is, the misrecital contained in it, that Hiram Johnson, the grantee, was the purchaser at the tax sale, whereas it appears on the face of the deed that he was not such purchaser, but was the assignee of the certificates of sale. This was a harmless mistake, and one which corrected itself on the face of the instrument. This objection is no more tenable than the others.

The several points of counsel made, and which proceed upon the supposition that a recorded tax deed valid on its face does not draw after it constructive possession of unoccupied lands,

are settled and determined by the recent decision in *Lawrence v. Kenney, ante*, p. 281.

The other questions presented by the record are as to the time of the delivery of the quitclaim deed from Johnson to the plaintiff, and whether Sargent had such adverse possession of the land under claim of title in himself, at the time of cutting and removing the logs and timber from it, as will prevent the plaintiff from maintaining this action to recover the value of the logs.

Upon the subject of the time of the delivery of the quitclaim deed the testimony was not clear, but there was enough, we think, to carry the question to the jury whether that deed was in fact delivered to the plaintiff after the tax deed was issued to Johnson. The instructions of the court upon this point were very clear and explicit, and such as to lead to the fairest and most intelligent consideration of it by the jury. We do not think their verdict can be disturbed.

Adverse possession of land, such as to prevent the true owner from maintaining trover or replevin for trees, timber or other things severed and taken from it, should be clearly established. Such possession should be of such a kind and so long continued as to be clearly distinguishable from that which the claimant has while engaged in the mere act of committing the waste or severing and removing the property from the freehold. It should be something different from that which every trespasser has and must have in order to commit the trespass. If it be only the possession enjoyed by the trespasser, and taken and held by him for the very purpose, and that alone, of committing the trespass, it is not an adverse possession within the meaning of the rule under consideration. The possession of Sargent was of the latter kind, and was not sufficient to defeat this action. He built his shanties and took possession for the sole purpose of cutting and carrying off the timber, and his possession was incidental, and subsidiary

merely to that object. He quit the possession the moment that object was accomplished. It matters not, therefore, that it took him some weeks or months to accomplish the object; he was a mere trespasser nevertheless, and so remained from first to last.

On consideration of the whole case, therefore, we find no error in it, and are of the opinion that the judgment should be affirmed.

*By the Court.*— Judgment affirmed.