Haseltine and another vs. Simpson.

HASELTINE and another vs. SIMPSON.

*October 27 — November 20, 1883.*

COUNTIES.   *(1) New county: tax deeds, by whom executed and where recorded.   (2) Publication of ordinance changing towns.*
LIMITATION OF ACTIONS: TAX DEED.   *(3) Pleading and practice. (4, 5) Defects in tax proceedings cured by statute.   (7) Fraud in assignment of certificates: evidence.*
CONSTITUTIONAL LAW.   *(6) Widows may have extraordinary time to redeem from tax sales.*

1. Ch. 114, Laws of 1879, provided that certain territory of Oconto county should constitute the county of New and should be attached to the county of Shawano for all county and judicial purposes until it had a certain population and should then be organized as other counties.   *Held,* that after the passage of such act and before the complete organization of New county, tax deeds of lands therein sold for taxes before the passage of the act, were properly issued by the clerk of Oconto county, and were properly recorded in Oconto county.
2. Under secs. 30–32, ch. 13, R. S. 1858 (sec. 674, R. S.), the publication of an ordinance changing the boundaries of towns among the proceedings of the county board, and not separately, is sufficient.

Haseltine and another vs. Simpson.

3. If in pleading the statute of limitations no particular statute is specified, the remedy is by motion to make more definite and certain; and an objection, made for the first time in this court, that no evidence should have been received under such plea, cannot prevail.

4. By ch. 114, Laws of 1879, the treasurer of Oconto county was required to assign certain tax certificates to the treasurer of Shawano county. But the objection that any other assignment was a nullity cannot be made after the lapse of nine months from the recording of the deed to the assignee. Secs. 1210d, 1210e, R. S.

5. So the objection that there had been no assignment in proper form of the tax certificate to the grantee in a tax deed, or that the affidavit of non-occupancy was defective, cannot be made after the lapse of nine months from the recording of the deed.

6. Semble, that an act (ch. 89, Laws of 1868), giving to widowed women an extraordinary length of time in which to redeem their lands from sales for taxes, is not unconstitutional.

7. A county treasurer as a witness on behalf of a party claiming title to land under a tax deed issued upon a certificate which had formerly belonged to the county, was asked on cross examination what interest he had in the case, and whether when the certificate was assigned he was interested in the fact of having it assigned. Held, that it was not error to exclude such questions. If their object was to show that the treasurer was in collusion with the assignee for his own personal benefit, or that he secured to himself a pecuniary benefit from such assignment, the questions were not broad enough. [Whether such collusion by the treasurer, or pecuniary benefit in making the assignment, would be such a fraud as would prevent the running of the statute of limitations on the tax deed, quœre.]

APPEAL from the Circuit Court for *Oconto* County.

Ejectment. The complaint is in the usual form. The answer admits the defendant's possession, and denies all allegations of the complaint. It further alleges that two tax deeds, covering all the lands, had been executed and delivered to the defendant by the county clerk of Oconto county, the defendant having previously become the owner of the tax certificates upon which such deeds were issued; that such deeds had been duly recorded in Oconto county; and that by virtue of said tax deeds and the records thereof,

Haseltine and another vs. Simpson.

"and the statutes of limitation of the state of Wisconsin applicable thereto, which statutes of limitation the defendant alleges she relies and will, at the trial of this action and at all times, rely and insist upon in support of her title to all of said lands under said tax deeds, the defendant claims an estate in fee simple in and to all of said lands, and that her possession thereof is lawful."

The cause was tried by the court, a jury having been waived. The plaintiffs introduced evidence of their title to the land, and it appeared that the plaintiff *Mrs. Scholfield,* who claimed to own an undivided one-half interest, had been a widow since 1863. The county clerk of Oconto county testified that he thought there had never been any offer to redeem any portion of the lands, but upon a letter being shown to him, admitted that he had written it and that the signature thereto was his. The letter was as follows:

"OCONTO, WIS., March 15, 1882.

"*Mr. B. W. James, Wausau, Wis.:*

"DEAR SIR.— I have consulted with Mr. R. Ellis, our district attorney in regard to your application for a certificate of redemption on *Mrs. Scholfield's* lands, and he advises me not to comply with your request, the new statute, in his opinion, not conferring the right of redemption upon widows. I herewith return the affidavit of *Mrs. Scholfield* and your draft No. 14,235, for $25.

"B. G. GRUNERT, County Clerk."

Other evidence will sufficiently appear from the opinion.

The court found, as facts, that prior to May 24, 1873, the plaintiff *Haseltine* had received patents from the United States of all the lands in question, and that on that day he conveyed an undivided one-half interest therein to the plaintiff *Mrs. Scholfield;* that from and after March, 1876, the lands were in the town of Langlade, in Oconto county; that they were assessed in that town for 1876, and sold on

May 8, 1877, for the nonpayment of the taxes so assessed; that the defendant, having become the owner of the several tax certificates issued upon such sale, obtained a tax deed of all the lands in question, except the S. E. ¼ of the N. E. ¼ of section 14, town 32, range 11 E., from the clerk of Oconto county, which deed was in due form, fair upon its face, duly witnessed and acknowledged, May 11, 1880, and duly recorded in the register's office for Oconto county, September 16, 1880; that on September 28, 1880, the defendant also obtained from said clerk a tax deed of the forty, which deed was in due form, fair upon its face, duly witnessed and acknowl-edged on that day, and was recorded in said register's office October 2, 1880.   As a conclusion of law, the court found that the defendant was, at the time of the commencement of the action, the absolute owner in fee simple of all the lands described in the complaint, and in the lawful possession thereof, and entitled to judgment accordingly, and for the costs and disbursements of the action.

From the judgment entered in accordance with such find-ings the plaintiffs appealed.

For the appellants there was a brief by *James & Crosby*, and oral argument by *Moses Hooper*.   They argued, among other things, that *Mrs. Scholfield* was entitled, at the time of her offer, to redeem her undivided one-half of the lands. This right of redemption is favored in the law.   *International Life Ins. Co. v. Scales*, 27 Wis., 640.   The tax certifi-cates on which the deeds to the defendant were issued, were executed on the sale of 1877, in May, and under ch. 89, Laws of 1868, giving widows five years in which to redeem their lands, *Mrs. Scholfield* could redeem at any time before May, 1882.   Her offer to redeem was made March 10, and refused March 15, 1882.   The limitation created by said ch. 89, Laws of 1868, having commenced to run before the Revised Stat-utes of 1878 took effect, the reduction of the period from five to three years (sec. 1165, R. S.) did not apply to her case.

R. S., sec. 4984; *Mead v. Nelson*, 52 Wis., 402; *Smith v. Janesville*, id., 680; *Manseau v. Edwards*, 53 id., 457; *Dalrymple v. Milwaukee*, id., 178. See Blackwell on Tax Titles, 484–488.

For the respondent there was a brief by *Webster & Brazeau*, and oral argument by *Mr. Webster*. They contended, *inter alia*, that there was no proper evidence of an offer to redeem. If such application was made, the tender of the money was not kept good. *Smith v. Phillips*, 47 Wis., 202. Ch. 89, Laws of 1868, so far as it attempts to confer upon widowed women an extraordinary benefit, is void as class legislation. *Lewis v. Webb*, 3 Greenl., 326; *Durham v. Lewiston*, 4 id., 140; *Holden v. James*, 11 Mass., 396; *Picquet, Appellant*, 5 Pick., 74; *Budd v. State*, 3 Humph., 483; *Wally's Heirs v. Kennedy*, 2 Yerg., 554; Cooley's Con. Lim. (2d ed.), 320. Not having redeemed before the respondent's deeds were recorded, *Mrs. Scholfield* has lost the right, and cannot claim to occupy any better position in this case than her co-plaintiff.

CASSODAY, J. 1. It is urged that the clerk of Oconto county had no authority to execute the tax deeds to the defendant, for the reason that the lands covered by the deeds were at the time of their execution in the county of New, which was attached to Shawano county for all county and judicial purposes by ch. 114, Laws of 1879. That act did purport to define the boundaries of the county of New to a certain extent, but such boundary was left incomplete. The act provided that all the territory of Oconto county included within such incomplete boundaries should constitute and be known as the county of New, which, by the terms of the act, was thereby attached to and made a part of the county of Shawano for *all county* and judicial purposes, until it should appear to the secretary of state, from a census duly taken, that the said county of New had a population of

1,000, when it should be organized by the election of county officers, as in other counties of the state; and the act provided, also, for a division of the property and liabilities of the respective counties, and that all tax certificates on lands embraced within the county of New should, on demand of the county treasurer of Shawano county, be assigned to Shawano county, and by it held in trust for the county of New until the same should be organized, and then to be turned over to it; and that as soon as the county of New should contain the requisite population, the secretary of state should give public notice of an election for all county officers. By ch. 19, Laws of 1880, the name of the county of New was changed to Langlade. Ch. 247, Laws of 1880, was enacted to correct and fix the boundaries between Langlade and Shawano, and to repeal such portions of ch. 114, Laws of 1879, as conflicted therewith. It does not appear that the requisite population existed, nor that any election for county officers was ever had, nor that any organization of the county of New or Langlade was ever effected until long after the issuance of the deeds in question. These things being so, and there being no attempt to divide the county of Oconto until long after the taxes in question were assessed and returned delinquent and sold, we must hold that even if the lands were included in the new county, yet the deeds were properly executed by the clerk of the old county. *Austin v. Holt*, 32 Wis., 478.

There is no evidence of any demand by the treasurer of Shawano county for an assignment of such certificates to that county, and there seems to be nothing in the act purporting to authorize the clerk of the board of that county to issue tax deeds thereon. Without such express authority the right would hardly be insisted upon. Besides, it is urged that there could be no new county without complete boundaries, and that if there could, yet it could not be attached to another county for county purposes. But under

Haseltine and another vs. Simpson.

the ruling already made.it is not absolutely essential. to pass upon these questions, and hence they are reserved for future consideration.

2. For the reasons given we must hold that, until the complete organization of the new county, tax deeds so issued were properly recorded in the county of Oconto, and that such record of a deed properly executed by the proper officer, and in the form required by law, would set the statute of limitations running in favor of the grantee as to unoccupied lands.

3. It is urged that the evidence is insufficient to sustain the finding that the lands in question were in the town of Langlade at the time they were assessed by that town in 1876. Undoubtedly the county board had the power to change the boundaries of towns therein. On March 2, 1876, it was ordered and determined by the county board that certain townships therein named, in which were situated the lands in question, be and were thereby set off from the towns therein designated, and organized into a new town by the name of Langlade, and a place was therein designated for the first town meeting of the town. The order was substantially in the form required by the statutes, and there was no evidence that it was not published, nor that any step essential to the complete organization of the town was omitted by any public officer, but on the contrary it was proved that such order and determination were duly published. These facts clearly distinguish the case from *Smith v. Sherry*, 54 Wis., 120. Certainly secs. 30, 31, 32, ch. 13, R. S. 1858 (sec. 674, R. S.), did not make the publication a nullity merely because the order was published among the proceedings of the board, and not separately.

4. It was claimed in the oral argument that the defendant is not in a position to avail herself of the benefit of the statute of limitations, because she did not plead it in the manner required by law. Certainly the answer in this respect is in-

formal, but no objection to evidence offered under it was made upon that ground, and the point does not appear to be made in the appellants' printed brief. We are also to remember that evidence is not to be excluded merely because a pleading is indefinite and uncertain. The remedy in such case is by motion to make the pleading more definite and certain. *Redmon v. Phœnix Ins. Co.*, 51 Wis., 298. Certainly such an objection made for the first time upon the argument in this court cannot prevail. We cannot, therefore, treat the plea of the statute of limitations as a nullity, but must give to the defendant the same benefit she would have derived from it under the evidence, if it had been properly pleaded.

5. It is urged that by reason of the provisions of ch. 114, Laws of 1879, above referred to, the treasurer of Oconto was bound to assign the tax certificates to the treasurer of Shawano, and that any other assignment was a nullity, and hence that the plaintiff got nothing by virtue of the assignment to him. But we are clearly of the opinion that sec. 1210$d$, R. S., has put that question to rest. The tax deeds were each issued upon sales made prior to March 25, 1878, for the nonpayment of taxes theretofore levied, and were respectively recorded September 16, 1880, and October 2, 1880, while the action was not commenced until January 18, 1882. Secs. 1210$d$ and 1210$e$, R. S., were designed to put at rest all questions of irregularity not excepted from their operation, and coming within the provisions of either one of them. To question irregularities occurring prior to the sale, the action should be commenced within nine months after making the sale. To question irregularities occurring prior to the certificate, the action should be commenced within nine months after the date of the certificate. To question irregularities occurring between the issuing of the certificate and the issuing of the deed, the action should be commenced within nine months after the recording of the deed. *Mead*

*v. Nelson*, 52 Wis., 402; *Dalrymple v. Milwaukee*, 53 Wis., 178; *Manseau v. Edwards*, 53 Wis., 457; *Dreutzer v. Smith*, 56 Wis., 292. The irregularities thus complained of occurred after the issuing of the certificate and before issuing the deed, and hence, under the statute, were barred from all controversy after the lapse of nine months from the recording of the deed without the commencement of an action.

6. For the same reasons, the offer to prove that the tax certificates were first assigned to another party, and from him to the defendant, without any written assignment, was unavailing. The statute having cured such defect, if any, the case was no longer within the principle of *Smith v. Todd*, 55 Wis., 459; *Dreutzer v. Smith*, 56 Wis., 292, and cases there cited. Those cases simply held that the defects referred to were available if insisted upon within the time and in the manner prescribed, but have no bearing upon a case where the alleged defect was not insisted upon in time.

7. For the same reasons, the affidavit of non-occupancy, if defective, as claimed, was cured by the statute of limitations.

8. We are inclined to think that the plaintiff *Mrs. Scholfield* had the right to redeem, under the statute and authorities cited by her counsel, but, as she has failed to exercise that right, the question is not squarely before us for consideration. As the time has not yet expired, and as a new trial may be had under the statute, perhaps we ought to say that we see no constitutional objection to such legislation.

9. The county treasurer, a witness on behalf of the defendant, on cross examination was asked these questions: " *Question.* What interest, if any, have you in this case? Defendant objected as incompetent and immaterial. Sustained. Plaintiff excepted. *Q.* When this certificate was assigned, were you interested in the fact of having it assigned? Same objection and same ruling as before, and plaintiffs again excepted." Were these rulings error? The treasurer being the proper official to make the assignment,

he, of course, as such officer, had an interest in making the assignment. If that was the only interest inquired about, then the questions were each immaterial. If the object of the inquiry was to show that he was in collusion with the assignee of the certificates for his own personal benefit, or that he secured to himself a pecuniary benefit from such assignment, outside of the fees of his office, then some questions pertinent to such inquiry should have been put. But we do not think that either of the above questions was broad enough to elicit such testimony. *Coleman v. Hart,* 37 Wis., 180.

10. Whether such collusion by such officer in making such assignment, or the making of the same for his own pecuniary benefit, would be such a fraud as would prevent the running of the statute of limitations, *quœre. McDonald v. Daniels, ante,* p. 426.

Upon the whole record we find no material error, and hence the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.