FIELD, Respondent, vs. PIER, Appellant.

*March 13—June 4, 1912.*

*Tax titles: Change in county boundaries: Who to execute tax deeds on lands detached: Redemption by minor in favor of his grantee: Payment by check: Waiver: Deeds: Construction: Interest conveyed.*

1. In a statute which takes territory from one county and attaches it to another, a provision that all tax certificates held by the former county on lands attached to the latter shall be assigned to the latter, and that the officers of the latter county shall execute tax deeds upon the certificates so assigned, does not apply to tax certificates held by private parties at the time of the change in boundaries.

2. Under sec. 1176, Stats. (1898), the county clerk of the county where the land is sold for taxes is authorized to execute the tax deed, in the absence of any legislative provision to the contrary, even though the land be set off into another county before the tax deed is due.

3. It was adjudged that the survivor of two partners held the title to an undivided half interest in certain land in trust for the firm and that he should convey an undivided half of the firm's interest (*i. e.* a one-fourth interest in the lands) to the administrator of the deceased partner in trust for the heirs at law and creditors of said decedent; also that the survivor pay to such administrator the sum of $3,450.04 and that the same be a lien on the interest of said survivor in said lands. The survivor thereafter conveyed to the heirs of said deceased partner the undivided half of the lands, reciting, among other things, that the deed was given in satisfaction of the judgment and that it was a conveyance of the title held by the grantor. *Held*, that such conveyance was of an undivided half (not merely a fourth) interest in the lands, it being deemed that the grantor conveyed his own interest in satisfaction or part satisfaction of the money which he was adjudged to pay.

4. A minor whose lands have been sold for taxes may redeem the same, within one year after reaching majority, in favor of a grantee to whom he has conveyed them.

5. Where a county clerk accepts and retains a check offered in redemption of land from a tax sale, without objection to the form of payment, and the check is admittedly good though not cashed by the clerk, it is a good redemption. A tender of money is waived by the acceptance and retention of the check under such circumstances.

APPEAL from an order of the circuit court for Iron county: JOHN K. PARISH, Circuit Judge. *Modified and affirmed.*

Action for partition of the following described premises, to wit: the northwest quarter of the northwest quarter and the south half of the northwest quarter of section 28, and the east half of the northwest quarter, the southwest quarter of the northeast quarter, and lot 1 of section 30, all in town 44 north, of range 4 east, situated in the county of Iron, state of Wisconsin. Plaintiff claims an estate in fee to an undivided one-half interest in said lands, and alleges that defendant has a similar interest therein; that the above described lands are all the lands in this state in which the parties to this action own any estate, either jointly or in common; and that, as plaintiff is informed and believes, no other persons have any interest or estate in said lands. The answer of the defendant denies that the parties own or possess the premises described as tenants in common, and denies that plaintiff has any right, title, or interest whatsoever in and to said lands, or in or to any part of them. Defendant further alleges that she is the owner in fee simple of the above described lands and of the whole of each of said lands, and sets out, as the foundation of her title thereto, four tax deeds issued by Oneida county, as follows: (1) May 23, 1892, on the tax sale of 1889, containing three of the above named descriptions of land; (2) April 9, 1895, on the tax sale of 1891, containing all the above described lands; (3) August 29, 1895, on the tax sale of 1892, containing four of the descriptions; and (4) May 14, 1898, on the tax sale of 1893, also containing four of the descriptions, which tax deeds were all duly recorded. The de-

fendant also pleaded the following statutes of limitation: secs. 1187, 1188, 1189a, and 1210h, Stats.

The action was begun September 26, 1907, and was tried by the court without a jury. The court found that at the commencement of the action the plaintiff held the lands herein described as tenant in common with the defendant and was then the owner in fee simple of an undivided one-half interest therein, and that defendant was then the owner in fee simple of the other undivided one-half interest therein; that the lands are vacant and unoccupied and are covered with timber, which differs greatly in value upon the different descriptions, and that they are so situated that a partition cannot be made without great prejudice to the owners, for the reason that they cannot be divided so as to give an equal value to each without subdividing forty-acre tracts; that they are all the lands which are owned by said parties together, either as tenants in common, joint tenants, or otherwise, within this state; and ordered the lands to be sold and the proceeds paid into court to abide its further order.

The lands were patented by the United States in 1886 to Henry Brinker and Matthew J. Hart; but by a judgment of the circuit court for Ashland county dated the 12th day of February, 1889, wherein John McCarthy, as administrator of the estate of Louis Brinker, deceased, was plaintiff, and Henry Brinker was defendant, it was decreed that Henry Brinker held the title to an undivided one-half interest in the lands in trust for the late firm of Henry Brinker & Brother, composed of Henry Brinker and Louis Brinker. It was in said judgment further adjudged and decreed that Henry Brinker convey to the plaintiff, in trust for the heirs at law and creditors of Louis Brinker, an undivided one-half of the firm's interest in said lands, and it was further adjudged and decreed that the defendant Henry Brinker pay to the plaintiff, as administrator, the sum of $3,450.04, and that the same be a lien on the interest of the defendant in the lots and lands

therein described. The deed of Henry Brinker and wife to
Ida, Helen, Flora, and Louis Brinker, dated the 6th day of
November, 1889, recites that the grantors, "for and in con-
sideration of the satisfaction of a certain judgment made and
entered in the circuit court of Ashland county, wherein John
McCarthy, as administrator of the estate of Louis Brinker,
is plaintiff, and Henry Brinker is defendant, on the 18th day
of February, 1889, in favor of the said plaintiff and against
the said defendant, have granted, given, bargained, sold, re-
leased, remised, aliened, conveyed, and confirmed" the undi-
vided one-half of the following described lands (describing
the lands in question), and it further recites "that these
presents are a conveyance of the title held by the said Henry
Brinker on the 16th day of June, 1887." In 1903 said Ida,
Helen, Flora, and Louis Brinker, and Mary Brinker, widow
of Louis Brinker, deceased, conveyed an undivided one-half
of said lands to the plaintiff. No redemption has been at-
tempted on the part of the widow, or of the children, Flora,
Helen, or Ida Brinker. Said children all became of age more
than one year previous to the commencement of the action.
Louis Brinker, the youngest, became of age June 22, 1907.
In 1905 he left with the county clerk of Oneida county a
check for $39.26 for the purpose of redeeming an undivided
one-eighth interest in the lands in question from the sales of
1889, 1891, 1892, and 1893. The parties stipulated that from
the time such check was left with the clerk until the present
there were sufficient funds in the bank upon which it was
drawn to meet it. The check was never cashed, nor was any
redemption receipt issued. It was, however, retained by the
county clerk and was in his possession subsequent to the com-
mencement of this action. On June 19, 1908, Louis Brinker
deposited $59.67 in cash with the clerk of Oneida county for
the purpose of redeeming an undivided one-half interest in
said lands, which, with the proceeds of the check left in 1905,
was sufficient in amount to redeem a half interest. The lands

were a portion of Oneida county until April, 1893, when, pursuant to the provisions of ch. 150 of the Laws of 1893, they became a part of Iron county. They have at all times been vacant and unoccupied.

From the order adjudging the title and directing a sale, as above stated, the defendant appealed.

*Geo. C. Foster,* for the appellant.

For the respondent there were briefs by *Sanborn, Lamoreux & Pray,* attorneys, and *Horace B. Walmsley,* of counsel, and oral argument by *Mr. Walmsley.*

The following opinion was filed April 3, 1912:

VINJE, J. If the tax deed issued by Oneida county April 9, 1905, which included all the lands in litigation, is valid, then it follows that the interest owned by Ida, Helen, and Flora Brinker, as well as by the widow, Mary Brinker, is cut off by the statute of limitations running in favor of the grantee in the tax deed, the lands being vacant and unoccupied. And the interest owned by Louis Brinker is also cut off unless a valid redemption has been made by him.

It is contended by the respondent that the tax deed of April 9, 1905, is void because issued by Oneida county on lands which, at the time of the tax sale, were located in Oneida county, but which at the time of the issuance of the tax deed were located in Iron county. In other words, it is claimed that Iron county and not Oneida county should have issued the tax deed.

Ch. 150 of the Laws of 1893, changing the boundaries of Iron county, provides that all tax certificates held by Oneida county on lands attached to Iron county shall on or before the 1st day of September, 1893, be assigned and delivered to the treasurer of said Iron county, and the act further provides that the proper officers of Iron county are authorized to execute tax deeds upon such certificates so assigned, which deeds shall be substantially in the form now prescribed for tax

deeds; but, in addition to the recitals now provided for, deeds which may be executed by said Iron county shall contain a recital of the fact that the certificates were assigned by said Oneida county. The act nowhere provides which county shall issue tax deeds upon certificates held by private parties on lands situated in Oneida county at the time of the tax sale but attached to Iron county before a tax deed could issue. The question, therefore, is, Which county, in the absence of special legislation, was authorized to issue the tax deed on the lands in question for the tax sale of 1891? Was it Oneida county, in which the lands were located at the time they were sold for taxes, or was it Iron county, in which they were located at the time the tax deed was issued. A reference to the legislative policy of the state in the creation of new counties will aid in determining this question.

Ch. 178 of the Laws of 1875 created Taylor county out of territory embraced within the counties of Clark, Marathon, Lincoln, and Chippewa. It made no provision for the issuance of tax deeds upon tax certificates held by private parties. By ch. 69 of the Laws of 1879 the act creating Taylor county was amended so as to authorize the county clerk of Taylor county and make it his duty to execute and deliver to the persons entitled thereto tax deeds upon all lands unredeemed from any tax sale prior to the year 1876 made by either of the counties of Chippewa, Lincoln, Clark, or Marathon and embraced within the territorial limits of Taylor county upon which tax certificates had theretofore been issued by said counties of Chippewa, Lincoln, Marathon, and Clark.

Ch. 103 of the Laws of 1879 created Price county out of territory theretofore embraced within the counties of Chippewa and Lincoln. The act made no provision for the issuance of tax deeds upon tax certificates held by private parties theretofore issued by the counties of Chippewa and Lincoln. But ch. 218 of the Laws of 1880 amended ch. 103 of the Laws

of 1879 so as to authorize the county clerk of Price county and make it his duty to execute and deliver to persons entitled thereto tax deeds upon all lands unredeemed from any tax sale prior to the year 1880 made by either of the counties of Chippewa or Lincoln and embraced within the territorial limits of Price county upon which tax certificates had theretofore been issued by said counties of Chippewa and Lincoln.

Ch. 33 of the Private and Local Laws of 1872 detached certain territory from the county of Jackson and annexed the same to the county of Wood. In 1877 this act was amended by ch. 137 of the laws of that year by authorizing the county clerk of Wood county to execute and deliver to the persons entitled thereto tax deeds upon all lands unredeemed from the tax sales of the years 1871 and 1872 made in Jackson county of the lands described in the act detaching territory from Jackson county and annexing it to Wood county.

Ch. 469 of the Laws of 1901 detached certain territory from the county of Chippewa and created the county of Gates. This act, by sec. 8 thereof, authorized the county clerk of Gates county and made it his duty to execute and deliver to persons entitled thereto tax deeds upon all lands unredeemed from any tax sale prior to the year 1902 made by the county of Chippewa and embraced within the territorial limits of the said county of Gates by which tax-sale certificates had theretofore been issued by said county of Chippewa, or which may thereafter have been issued on sales of land returned and sold previous to the passage, publication, and taking effect of the act.

Ch. 411 of the Laws of 1885 detached certain territory from Lincoln county and created the county of Oneida. The act made no provision for the issuance of tax deeds upon certificates held by private parties, but it authorized the county of Oneida to execute tax deeds upon tax certificates assigned to it by Lincoln county.

Ch. 172 of the Laws of 1883 detached certain territory from Burnett county and created the county of Washburn. Sec. 6 thereof provided:

"All lands heretofore sold for taxes, or that may be sold for the taxes of 1882, situated within said county of Washburn, shall be subject to redemption in, and if not redeemed, advertised and deeded by the county of Burnett."

A more extended search would no doubt disclose similar laws enacted in the creation of other counties, or as amendments thereto; but the above is sufficient to indicate that it has been considered necessary, to enable a new county to issue tax deeds upon certificates issued to private parties by the old county, to secure special legislative authority therefor. True, in the case of the creation of Washburn county out of Burnett it was provided that the old county should issue the tax deeds, but that must be deemed merely declaratory of the law as it existed. The old county alone is interested in the levy and collection of the tax upon which the tax deed is issued in such cases. The proceeds of the sale of the certificates went to it. If a refund were demanded under sec. 1184, Stats. (Laws of 1909, ch. 71), on account of any invalidity therein mentioned as to the certificate or deed, the old county would have to make it. The new county would have no interest in, or authority over, such question of refunding.

Sec. 1165, Stats. (1898), provides that a redemption may be made to the county clerk of the county where the land was sold, indicating that such county is the one that has authority to deal with the whole subject matter, including the execution of a deed if no redemption is made. Great stress is placed by respondent upon the fact that sec. 25 of ch. 22 of the Laws of 1859 provided that, if no redemption of land was made, the county clerk of the county where the same was sold should execute a deed, etc., and that in the Revision of 1878 the words "where the same was sold" were left out. We fail to see any special significance in this omission. Certainly the

county clerk of the county where the lands were sold would be the proper county clerk to execute the deed in the great majority of cases. Only when territory is changed from one county to another could the law .apply at all if a change was intended by it. We do not, however, consider that a change in the law was intended further than not to have a specific general statutory provision apparently stand in opposition to the many exceptions which the legislature had made in the creation of new counties, and has since made. Sec. 1176 as it now stands (Stats. 1898) must be construed to mean that the county clerk of the county where the land is sold for taxes is authorized to execute the tax deed in the absence of any legislative provision to the contrary, even though it be set off into another county before the certificates are ripe for a tax deed. Such was its construction prior to the Revision of 1878. *Austin v. Holt,* 32 Wis. 478. See, also, *Haseltine v. Simpson,* 58 Wis. 579,.17 N. W. 332. It follows that the tax deed of April 9, 1905, upon the lands executed by the county clerk of Oneida county is a valid tax deed, and divested the title of the original owners except as it may have been saved by a redemption. That being so, the questions as to the validity of the first tax deed, and as to the application of the various statutes of limitations, become immaterial.

Respondent claims that Louis Brinker has a one-eighth interest in the lands in question, while the appellant argues that he has only a one-sixteenth interest therein. The correctness of the respective claims depends upon whether Henry Brinker and wife conveyed to the minor heirs of Louis Brinker, deceased, a one-half or a one-fourth interest. It is the claim of respondent that only the undivided one-fourth interest of Louis Brinker, deceased, was conveyed by the deed of Henry Brinker and wife given in satisfaction of the judgment referred to in the statement of facts, and that he did not convey his own undivided one-fourth interest. We are unable to concur in this view. The judgment of the circuit court ad-

judged not only that Henry Brinker convey the one-fourth interest of Louis Brinker, deceased, but also that he was indebted to the estate in the sum of $3,450.04, and the deed recites that it is given in satisfaction of the judgment, and is a conveyance of the title held by the grantor—not a conveyance of the title held in trust by him. It must be deemed he conveyed his own interest in satisfaction or part satisfaction of the money due from him to the estate. This conveyed a one-eighth interest to the minor, Louis Brinker.

Has a lawful redemption been made of the minor's interest? He became of age June 22, 1907, and under the statute he may redeem at any time within one year after reaching majority. Sec. 1166, Stats. (1898). On June 19, 1908, within one year after he became of age, he deposited with the county clerk of Oneida county sufficient cash to redeem a one-eighth interest in the lands. This was a valid redemption. True, he had deeded the land to plaintiff in 1903, but it was held in *Hoffman v. Peterson,* 123 Wis. 632, 102 N. W. 47, that a minor can redeem in favor of a grantee after he has conveyed title by deed. The redemption made by the deposit of the check in 1905 must also be deemed sufficient. The county clerk accepted the check and did not object to the issuance of a redemption receipt on the ground that a check instead of money was tendered. It is stipulated that the check was and still is good. A tender of money must be held to have been waived by its acceptance and retention under the circumstances.

The result is that the order appealed from must be modified by decreeing that plaintiff is the owner in fee simple of an undivided one-eighth interest in the lands described in the complaint and that the defendant is the owner of an undivided seven-eighths thereof, and, as so modified, affirmed.

*By the Court.*—Order modified as indicated in the opinion, and, as so modified, affirmed, with costs in favor of appellant.

A motion for a rehearing was denied June 4, 1912.